

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00353-CR

RICARDO MARTINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 413th District Court
Johnson County, Texas[1]
Trial Court No. F49348, Honorable William C. Bosworth, Jr., Presiding

April 11, 2016

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Ricardo Martinez, was convicted of the offense of felony murder[2] and sentenced to the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for life. Appellant appeals, contending that the trial court erred (1) by denying his

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Tenth Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011). Further reference to the Texas Penal Code will be by reference to "section ____" or "§ ____."

motion to quash the indictment and (2) by denying his motion to suppress the blood tests results. We will affirm.

## Factual and Procedural Background

Inasmuch as appellant does not challenge the sufficiency of the evidence to sustain the jury's verdict, we will only discuss the evidence as necessary to resolve the issues presented.

In the early morning hours of March 8, 2015, appellant was involved in a fatal automobile collision on Highway 67 in Johnson County, Texas. At the time of the collision, appellant was traveling in a southwesterly direction in the vehicle traffic lanes designated for northeasterly travelling traffic. As a result of the collision, C.D. was killed.[3]

Appellant was transported to Texas Health-Harris Methodist Hospital in Fort Worth, Texas, for treatment of his injuries. While appellant was receiving treatment in the emergency room at the hospital, ten vials of blood and one vial of urine was taken from him. On March 9, 2015, a grand jury subpoena was served on the hospital and the samples were picked up by Detective Scott Heisey of the Alvarado Police Department. Heisey then transported the samples to the Tarrant County Medical Examiner's Office (TCME).

---

[3] Pursuant to Texas Rule of Appellate Procedure 9.8, we will refer to the minor victim by initials only.

The whole blood samples were examined by Aria McGill, a forensic toxicologist at TCME. The result of the testing of appellant's blood was an alcohol concentration of .21 grams/deciliter.[4]

Based upon appellant's prior criminal record, he was indicted for murder pursuant to the felony-murder provision of section 19.02(b)(3). The underlying felony driving-while-intoxicated allegation was based on appellant's two previous driving-while-intoxicated convictions.

Prior to trial, appellant filed the first of two motions to quash the indictment. The trial court overruled both motions. Appellant's issue on appeal is directed to the first motion to quash filed on June 1, 2015. By that motion, appellant contends that the indictment is vague and fails to place appellant on sufficient notice of the charges pending against him and, further, the vagueness of the indictment would not allow appellant to plead the indictment as a bar to subsequent prosecution for the same offense.

Appellant also filed a motion to suppress the blood test results, contending that the blood samples were obtained in violation of his constitutional rights pursuant to the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. The trial court heard appellant's motion to suppress the evidence on August 10, 2015. The trial court denied the motion and filed findings of fact and conclusions of law.

---

[4] Texas Penal Code defines alcohol concentration as the number of grams of alcohol per 100 milliliters of blood. *See* § 49.01(1)(B) (West 2011). A deciliter is equal to 100 milliliters.

Trial commenced on August 17, 2015, with voir dire examination of the prospective jurors. After selecting a jury, appellant entered a plea of not guilty to the indictment and not true to each of the driving-while-intoxicated enhancement allegations. Appellant's trial concluded on August 20, 2015, when the jury returned a verdict of guilty to the charge of murder, as contained in the indictment. After hearing the punishment evidence, the jury sentenced appellant to life imprisonment in the ID-TDCJ.

Appellant has perfected his appeal and brings forth two issues. Issue one contends that the trial court committed reversible error by overruling appellant's first motion to quash the indictment. Issue two contends that the trial court committed reversible error by denying the motion to suppress the evidence of the blood tests. We disagree with appellant's contentions and affirm the trial court's judgment of conviction.

## Motion to Quash the Indictment

Appellant contends that the indictment presented against him does not contain sufficient details to place him on notice of how the act alleged—"to wit: operate a motor vehicle the wrong way down a public street"—constitutes a crime and that the language would not bar a subsequent prosecution for the same offense.

### Standard of Review and Applicable Law

Any individual charged with commission of a criminal offense is guaranteed the right to notice of the accusations pending against him. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The Texas Code of Criminal Procedure has codified the

constitutional requirements in article 21.04. *See* TEX. CODE CRIM. PROC. ANN. art. 21.04 (West 2009).[5] Article 21.04 provides as follows:

> The certainty required in an indictment is such as will enable the accused to plead the judgment that may given upon it in bar of any prosecution for the same offense.

Article 21.11 further provides guidance by providing the following:

> An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with the degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment.

*Id.* art. 21.11 (West 2009).

Upon the filing of a motion to quash an indictment, we must analyze the indictment to determine whether it states on its face facts necessary to allege that an offense was committed, to bar any subsequent prosecution for the same offense, and to give the accused notice of the precise offense with which he is charged. *See Rotenberry v. State,* 245 S.W.3d 583, 586 (Tex. App.—Fort Worth 2007, pet. ref'd) (citing *DeVaughn v. State,* 749 S.W.2d 62, 67 (Tex. Crim. App. 1988 (en banc)).

A motion to quash an indictment is reviewed as a matter of law; therefore, we review, a trial court's decision to grant or deny a motion to quash de novo. *See Smith v. State,* 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010). When conducting our de novo review, we analyze the indictment as a whole instrument to determine if proper notice has been given. *See DeVaughn,* 749 S.W.2d at 67. The information upon which the

---

[5] Further reference to the Texas Code of Criminal Procedure will be by reference to "Article ____," "article ____," or "art. ____."

accused prepares his defense must come from the face of the indictment itself. *See id.* The notice provided by the indictment must be examined in light of the constitutional presumption of innocence afforded a defendant. *See id.* at 68. An indictment that tracks the language of the statute will, subject to rare exceptions, satisfy the constitutional and statutory requirements of notice. *See Smith,* 309 S.W.3d at 14.

Analysis

Appellant contends that the indictment against him was deficient because it lacked the specificity that would have sufficiently placed him on proper notice of the offense and manner and means by which the offense was committed. The pertinent part of the indictment at issue alleged that appellant did then and there:

> Commit a felony, to wit: driving while intoxicated, after having been previously convicted two times of the offense of driving while intoxicated, and in the course of and furtherance of the commission of said felony, he committed or attempted to commit an act clearly dangerous to human life, to wit: operate a motor vehicle the wrong way down a public roadway and said conduct resulted in and caused the motor vehicle operated by said defendant to collide with another motor vehicle occupied by [C.D.], which caused the death of [C.D.].

In appellant's analysis of the indictment, appellant chooses the words "wrong way" to pose the question of how operating a motor vehicle the "wrong way" down a public roadway was an act clearly dangerous to human life. Such analysis might have traction if we were not otherwise directed to view the indictment as a whole instrument, as opposed to picking words to view in isolation. *See DeVaughn,* 749 S.W.2d at 67. What is absent from appellant's analysis is the following phrase "down a public roadway."

6

Taking the common and understood meaning of the words in the indictment and reading them as a single document we find the following. "Operate" is defined "as to function or behave in a proper or particular way" or "to use and control (something)." *See Operate*, MERRIAM-WEBSTER, http//www.merriam-webster.com/dictionary/operate (last visited Apr. 7, 2016). "Wrong" is defined as "behavior that is not morally good or correct" and "a harmful, unfair, or illegal act." *Wrong*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/wrong (last visited Apr. 7, 2016). "Way" is defined as "a thoroughfare for travel or transportation or the course traveled from one place to another." *Way*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/way (last visited Apr. 7, 2016). When the common meaning of these words are put into the sentence in the indictment, we find that appellant is charged with using or controlling a motor vehicle in a harmful or illegal manner on a course of travel on a public roadway. At the end of the day, appellant was provided with an indictment that used ordinary and concise language that would allow a person of common understanding to know with what he was charged. *See* art. 21.11.

This indictment tracked the language of the Texas Penal Code section 19.02(b)(3) and provided a proper description of the manner and means by which appellant violated that statute. *See* § 19.02(b)(3). This is not one of those rare exceptions where tracking the language of the statute is not sufficient. *See Smith,* 309 S.W.3d at 14.

When this indictment is read as a complete document, it provides proper notice to appellant. *See DeVaughn,* 749 S.W.2d at 67. Accordingly, we overrule appellant's first issue.

7

By his second issue, appellant contends that the trial court erred in denying his motion to suppress the blood tests results. It is appellant's contention that the trial court abused its discretion in denying the suppression motion because the evidence was obtained in violation of appellant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. The essence of appellant's argument is that he had a reasonable expectation of privacy as to his blood samples and, thus, had standing to challenge the use of the results in a criminal trial. Additionally, appellant argues that his privacy rights were guaranteed by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996), and its attendant privacy regulations known collectively as the HIPAA Privacy Rule. *See* General Administrative Requirements, 45 C.F.R. pt. 160; Security and Privacy, 45 C.F.R. pt. 164.[6]

Standard of Review

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *In re Moore,* 395 S.W.3d 152, 158 (Tex. Crim. App. 2013) (citing *Balentine v. State,* 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)). As an appellate court, we give almost total deference to the trial court's assessment of historical facts that turn on credibility and demeanor. *See State v. Saenz,* 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). Those historical facts must be supported by the record. *See Wade v. State,* 422

---

[6] Further references to HIPAA regulations will be by reference to "HIPAA § ____."

S.W.3d 661, 666 (Tex. Crim. App. 2013).  Thus, the findings of fact of the trial court, which find support in the record, and the rational inferences drawn from those supported facts are entitled to deference on appeal.  *See Manzi v. State,* 88 S.W.3d 240, 243 (Tex. Crim. App. 2002).  We review de novo a trial court's application of the law of search and seizure to the facts.  *Wade,* 422 S.W.3d at 667.  We uphold the trial court's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case.  *Id.* (citing *Valtierra v. State,* 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010)).

Analysis

The relevant facts of the taking of the blood samples reveal that, initially, the blood was drawn as a part of appellant's emergency medical treatment at Texas Health-Harris Methodist Hospital in Fort Worth.  Those blood samples were later turned over to the Alvarado Police Department pursuant to a grand jury subpoena.  The blood samples were then transported to the TCME's office where the analysis was performed.  The trial court held a hearing on appellant's motion to suppress the blood test evidence and denied the same.  In denying the appellant's motion, the trial court filed findings of fact and conclusions of law finding that the blood was drawn for medical treatment purposes and that the samples were provided to the State pursuant to a grand jury subpoena and concluding that appellant had no reasonable expectation of privacy in the results of blood specimens drawn for medical purposes.

In analyzing appellant's complaints we must first remember that the Fourth Amendment and Article I, Section 9 of the Texas Constitution protects a citizen from

9

unreasonable search and seizure. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. There is no question that, where the State instigates the drawing of blood there has been a search and seizure for purposes of the United States Constitution and the Constitution of Texas. *See Schmerber v. California,* 384 U.S. 757, 768, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966); *Ferguson v. State,* 573 S.W.2d 516, 520 (Tex. Crim. App. 1978) (en banc).

However, in the facts that we are called upon to analyze, the State did not instigate the taking of samples of appellant's blood. Rather, appellant's blood samples were taken as part of his emergency medical treatment. So, we are faced with the question of whether appellant has any reasonable expectation of privacy regarding his blood samples when they were drawn, initially, pursuant to medical treatment. Further, the question then becomes whether this expectation of privacy is one which society recognizes as legitimate. *See Villarreal v. State*, 935 S.W.2d 134, 138 n. 5 (Tex. Crim. App. 1996) (en banc).

Appellant relies on *State v. Comeaux,* 818 S.W.2d 46, 48 (Tex. Crim. App. 1991) (en banc), to support his position that he had a reasonable expectation of privacy. In that case, Comeaux was driving from a party he had catered when a car crossed over and struck his vehicle head on. *See id.* Comeaux was taken to the hospital. A Department of Public Safety trooper called an on-duty Austin Police Officer at the hospital and asked that a blood sample be taken from Comeaux. *See id.* The DPS trooper specifically testified that he had no reason to suspect Comeaux was intoxicated and that he did not want him placed under arrest. *See id.* However, the APD officer requested a sample of the blood taken from Comeaux and, when he was refused a

sample without the consent of Comeaux, presented a form entitled "Statutory Authorization: Mandatory Blood Specimen" to the nurse. *See id.* at 49. After receiving the form, the nurse provided the blood sample to the officer. *See id.* The court held that the nurse turned the sample over to the APD officer because he demanded it under an assertion of mandatory authority. *See id.* at 51. Under these facts and based upon the statutory scheme in place at the time, the court ruled that Comeaux had a legitimate expectation of privacy. *See id.* at 53 (citing The Medical Practice Act, V.A.T.C.S., art. 4495b, § 508 at page 52 of the opinion). Thus, the court held that the search and seizure was not justified and affirmed the suppression of the results of the blood tests. *See id.* at 53.

The State maintains that *Comeaux* does not control the matter before us; rather, it contends, we should apply the principles of *State v. Hardy,* 963 S.W.2d 516, 527 (Tex. Crim. App. 1997) (en banc) (holding that whatever interest society has in safeguarding the privacy of medical records, they are not sufficiently strong to require protection of blood-alcohol test results from tests taken by hospital personnel solely for medical purposes after a traffic accident.) *Hardy* starts with the proposition that *Comeaux* was a plurality opinion and is not binding precedent. *See id.* at 519. In *Hardy*, the blood was drawn and tested at the hospital. *See id.* at 518. Subsequently, a grand jury subpoena was issued for test results. *See id.* The trial court granted Hardy's motion to suppress the tests results, and the intermediate appellate court reversed and remanded the case to the trial court. *See id.* After a thorough analysis of the then-existing statutory scheme, the Texas Court of Criminal Appeals held that there was no reasonable privacy expectation in the medical records under the facts of the case. *See id.* at 527.

11

The intermediate appellate courts in Texas have followed the *Hardy* holding by allowing the results of blood-alcohol tests that were performed on blood drawn and tested at medical facilities pursuant to medical treatment. *See Tapp v. State,* 108 S.W.3d 459, 462 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *Garcia v. State,* 95 S.W.3d 522, 525 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Alvarez v. State,* No. 03-01-00532-CR, 2002 Tex. App. LEXIS 2215, at *4–5 (Tex. App.—Austin Mar. 28, 2002, no pet.) (mem. op., not designated for publication).

Since the passage of HIPAA, several intermediate appellate courts have also allowed the use of blood-alcohol tests where the blood was drawn and the test performed pursuant to medical treatment. *See Kennemur v. State,* 280 S.W.3d 305, 311–12 (Tex. App.—Amarillo 2008, pet ref'd); *Kirsch v. State,* 276 S.W.3d 579, 587 (Tex. App.—Houston [1st Dist.] 2008), *aff'd on other grounds,* 306 S.W.3d 738 (Tex. Crim. App. 2010); *Murray v. State,* 245 S.W.3d 37, 41–42 (Tex. App.—Austin 2007, pet. ref'd).

As a result of these holdings, we are faced with the decision of whether the place the blood-alcohol test was performed is determinative of appellant's legitimate privacy interests. We do not think that the situs of the actual testing is determinative of appellant's privacy expectation. Moreover, appellant's blood draw was initially for medical purposes and the cases cited have held that appellant had no reasonable expectation of privacy. *See Tapp,* 108 S.W.3d at 462; *Garcia,* 95 S.W.3d at 525; *Alvarez,* 2002 Tex. App. LEXIS 2215, at *4–5. We do not think that the fact that the State is the tester of the blood draw will reinstate appellant's expectation of privacy.

Accordingly, we find that appellant had no privacy expectation, and we overrule appellant's contention to the contrary.

By our review of the *Kirsch, Murray,* and *Kennemur* opinions a medical facility may provide the medical information of a patient for law enforcement purposes to a law enforcement official. *See* HIPAA § 164.512(f)(1)(ii)(B). We therefore, overrule appellant's contention to the contrary.

Finally, even were we to agree that appellant had an expectation of privacy, the trial court's denial of his motion to suppress would be harmless error. *See* TEX. R. APP. P. 44.2(a). A constitutional error subject to harmless error review must result in reversal unless the Court is convinced beyond a reasonable doubt that the error did not contribute to the conviction or punishment of appellant. *See id.* The erroneous admission of evidence in violation of the Fourth Amendment is subject to harmless error review. *See Hernandez v. State,* 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Our review of the complete record convinces the Court that the State proved that, on the day in question, appellant had lost the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, as defined in the trial court's charge. Many witnesses testified to facts of appellant's intoxication separate and apart from the blood-alcohol tests. This testimony included appellant's own testimony, which the jury could have easily understood as an admission of intoxication. In addition, the fact that appellant drove some distance going the wrong way on a divided highway and had two near misses with oncoming traffic prior to the collision in question speaks volumes about his state of intoxication. We are convinced beyond a reasonable doubt that the

error, assuming there was error, in denying appellant's motion to suppress the evidence of the blood-alcohol test was harmless. *See* TEX. R. APP. P. 44.2(a).

## Conclusion

Having overruled all of appellant's contentions, we affirm the jury's verdict and the judgment entered.


Mackey K. Hancock
Justice


Do not publish.